APPEAL,CLOSED,E–FILE,JURY,PROSE–NP,TYPE–F

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:24–cv–02853–RBW</u>

KLAYMAN v. PORTER et al

Assigned to: Judge Reggie B. Walton

Related Cases:  1:22–cv–00953–RBW

1:21–cv–00965–RBW

Case in other court:  Superior Court for the District of
Columbia, 2024–CAB–005520

Cause: 28:1331 Fed. Question

Date Filed: 10/07/2024

Date Terminated: 02/09/2026

Jury Demand: Plaintiff

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**LARRY ELLIOT KLAYMAN**

represented by **LARRY ELLIOT KLAYMAN**
Freedom Watch, Inc.
2020 Pennsylvania Ave NW
Suite 345
Washington, DC 33433
310–595–0800
Email: leklayman@gmail.com
PRO SE

V.

**<u>Defendant</u>**

**JULIA PORTER**

represented by **Leslie Paul Machado**
O'HAGAN MEYER, PLLC
225 Reinekers Lane
Ste 300
Alexandria, VA 22314
703–775–8607
Email: lmachado@ohaganmeyer.com
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**HAMILTON P FOX, III**

represented by **Leslie Paul Machado**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**LAWRENCE BLOOM**

represented by **Leslie Paul Machado**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**OFFICE OF DISCIPLINARY**

represented by **Leslie Paul Machado**

**COUNSEL**                              (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**BOARD ON PROFESSIONAL**      represented by  **Leslie Paul Machado**
**RESPONSIBILITY**                       (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**BERNADETTE SARGEANT**        represented by  **Leslie Paul Machado**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT WALKER**              represented by  **Leslie Paul Machado**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**SARA BLUMENTHAL**            represented by  **Leslie Paul Machado**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**MARGARET CASSIDY**           represented by  **Leslie Paul Machado**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**THOMAS GILBERTSEN**          represented by  **Leslie Paul Machado**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM HINDLE**             represented by  **Leslie Paul Machado**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**MICHAEL TIGAR**              represented by  **Leslie Paul Machado**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**LESLIE SPIEGEL**                  represented by   **Leslie Paul Machado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ERIC YAFFE**                      represented by   **Leslie Paul Machado**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Lee Sturm**
LATHROP GPM LLP
600 New Hampshire Avenue, N.W.
The Watergate
Suite 700
Washington, DC 20037
202–295–2241
Fax: 202–295–2250
Email: michael.sturm@lathropgpm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Cofer Landon**
LATHROP GPM LLP
80 S 8th St
Ste 3100 IDS Center
Minneapolis, MN 55402
612–632–3000
Email: richard.landon@lathropgpm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**LATHROP GPM LLP.**                represented by   **Michael Lee Sturm**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Cofer Landon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**SHARON RICE–HICKS**               represented by   **Leslie Paul Machado**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/07/2024 | 1 | NOTICE OF REMOVAL from DC Superior Court, case number 2024−CAB−005520 Filing fee $ 405, receipt number ADCDC−11214880 filed by JULIA PORTER, HAMILTON P FOX, III, LAWRENCE BLOOM. (Attachments: # 1 Exhibit Superior Court docket, # 2 Exhibit Original complaint, # 3 Exhibit Amended complaint, # 4 Exhibit Initial Order, # 5 Exhibit Service email exchange, # 6 Civil Cover Sheet)(Machado, Leslie) (Entered: 10/07/2024) |
| 10/07/2024 | 2 | NOTICE OF RELATED CASE by LAWRENCE BLOOM, HAMILTON P FOX, III, JULIA PORTER. Case related to Case No. 20−cv−3109; 21−cv−3579; 21−cv−965; 22−cv−953. (Machado, Leslie) (Entered: 10/07/2024) |
| 10/08/2024 |  | NOTICE OF NEW CASE ERROR regarding 1 Notice of Removal,. The following error(s) need correction: Noncompliance with LCvR 5.1(c). Please file a Notice of Errata stating the error and attach the corrected initiating pleading to include the name & full residence address of each party and file using the event Errata. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (zcb) (Entered: 10/08/2024) |
| 10/08/2024 | 3 | ERRATA by LAWRENCE BLOOM, HAMILTON P FOX, III, JULIA PORTER re Notice of Error− New Case,. (Attachments: # 1 Exhibit Corrected Notice of Removal)(Machado, Leslie) (Entered: 10/08/2024) |
| 10/08/2024 |  | Case Assigned to Judge Reggie B. Walton. (zcb) (Entered: 10/08/2024) |
| 10/08/2024 | 4 | NOTICE to Counsel/Party re 1 Notice of Removal, (Attachments: # 1 Notice and Consent)(zcb) (Entered: 10/08/2024) |
| 10/10/2024 | 6 | Receipt on 10/10/2024 of ORIGINAL FILE, certified copy of transfer order and docket sheet from Superior Court. Superior Court Number 2024−CAB−005520. (mg) (Entered: 10/15/2024) |
| 10/14/2024 | 5 | MOTION for Extension of Time to *respond to complaint* by LAWRENCE BLOOM, HAMILTON P FOX, III, JULIA PORTER. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Machado, Leslie) (Entered: 10/14/2024) |
| 10/15/2024 | 7 | MOTION to Dismiss *Lathrop Defendants'* by LATHROP GPM LLP., ERIC YAFFE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Sturm, Michael) (Entered: 10/15/2024) |
| 10/16/2024 | 8 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Richard C. Landon, Filing fee $ 100, receipt number ADCDC−11236519. Fee Status: Fee Paid. by LATHROP GPM LLP., ERIC YAFFE. (Attachments: # 1 Declaration of Richard C. Landon, # 2 Exhibit 1 − Certificate of Good Standing)(Sturm, Michael) (Entered: 10/16/2024) |
| 10/25/2024 |  | MINUTE ORDER. Upon consideration of the 5 Defendants' Motion to Extend Their Responsive Pleading Deadline, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that, on or before November 1, 2024, the defendants shall answer or otherwise respond to the plaintiff's Amended Complaint. Signed by Judge Reggie B. Walton on October 25, 2024. (lcrbw3) (Entered: 10/25/2024) |

| 11/01/2024 | 9 | MOTION to Dismiss , MOTION for Sanctions by JULIA PORTER, HAMILTON P FOX, III, LAWRENCE BLOOM. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit Table of Contents, # 3 Exhibit, # 4 Exhibit, # 5 Text of Proposed Order)(Machado, Leslie) (Entered: 11/01/2024) |
|---|---|---|
| 11/13/2024 | 10 | MOTION for CM/ECF Password, MOTION for Extension of Time to File Response/Reply as to 9 MOTION to Dismiss MOTION for Sanctions by LARRY KLAYMAN. (zdp) (Entered: 11/14/2024) |
| 11/18/2024 | | MINUTE ORDER. Upon consideration of the plaintiff's 10 Motion for Extension of Time and for CM/ECF User Name and Password, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that on or before December 6, 2024, the plaintiff shall file responses in opposition to the defendants' motions to dismiss. It is further ORDERED that the Clerk of the Court shall forthwith ISSUE a CM/ECF User Name and Password to the plaintiff. It is further ORDERED that the Clerk of the Court shall forthwith mail a copy of this Minute Order to the plaintiff's address on record. Signed by Judge Reggie B. Walton on November 18, 2024. (lcrbw3) (Entered: 11/18/2024) |
| 11/18/2024 | | MINUTE ORDER. The Court, having considered the defendants Eric L. Yaffe and Lathrop GPM LLP's 8 Motion for Admission Pro Hac Vice of Attorney Richard C. Landon, and it appearing to the Court that the attorney referenced therein meets the requirements for pro hac vice admission under this Court's rules, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Richard C. Landon, of Lathrop GPM LLP, 80 South 8th St., 3100 IDS Center, Minneapolis, MN 55401, is ADMITTED to practice before the Court pro hac vice in this case. Signed by Judge Reggie B. Walton on November 18, 2024. (lcrbw3) ORDER granting 8 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions (Entered: 11/18/2024) |
| 12/04/2024 | 11 | MOTION for Extension of Time to File Response/Reply as to 9 MOTION to Dismiss MOTION for Sanctions , 7 MOTION to Dismiss *Lathrop Defendants'* by LARRY ELLIOT KLAYMAN. (KLAYMAN, LARRY) (Entered: 12/04/2024) |
| 12/05/2024 | 12 | RESPONSE re 11 MOTION for Extension of Time to File Response/Reply as to 9 MOTION to Dismiss MOTION for Sanctions , 7 MOTION to Dismiss *Lathrop Defendants'* filed by JULIA PORTER, HAMILTON P FOX, III, LAWRENCE BLOOM. (Attachments: # 1 Exhibit Email exchange, # 2 Text of Proposed Order)(Machado, Leslie) (Entered: 12/05/2024) |
| 12/05/2024 | 13 | NOTICE of Appearance by Richard Cofer Landon on behalf of ERIC YAFFE, LATHROP GPM LLP. (Landon, Richard) (Entered: 12/05/2024) |
| 12/06/2024 | 14 | REPLY to opposition to motion re 11 Motion for Extension of Time to File Response/Reply filed by LARRY ELLIOT KLAYMAN. (KLAYMAN, LARRY) (Entered: 12/06/2024) |
| 12/11/2024 | | MINUTE ORDER. Upon consideration of the plaintiff's 11 Motion for Extension of Time, it is hereby ORDERED that the plaintiff's 11 Motion for Extension of Time is GRANTED. It is further ORDERED that the deadline for the plaintiff to respond to the defendants' motions to dismiss, should he wish to do so, is EXTENDED to December 31, 2024. Signed by Judge Reggie B. Walton on December 11, 2024. (lcrbw3) (Entered: 12/11/2024) |

| 12/26/2024 | 15 | MOTION for Extension of Time to File Response/Reply as to 9 MOTION to Dismiss MOTION for Sanctions , 7 MOTION to Dismiss *Lathrop Defendants'* by LARRY ELLIOT KLAYMAN. (KLAYMAN, LARRY) (Entered: 12/26/2024) |
| 12/27/2024 | | MINUTE ORDER. Upon consideration of the plaintiff's 15 Plaintiff's Motion for Extension of Time, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that, on or before January 10, 2025, the plaintiff shall file his opposition to the defendants' motions to dismiss. Signed by Judge Reggie B. Walton on December 27, 2024. (lcrbw3) (Entered: 12/27/2024) |
| 01/10/2025 | 16 | RESPONSE re 9 MOTION to Dismiss MOTION for Sanctions filed by LARRY ELLIOT KLAYMAN. (KLAYMAN, LARRY) (Entered: 01/10/2025) |
| 01/10/2025 | 17 | RESPONSE re 7 MOTION to Dismiss *Lathrop Defendants'* filed by LARRY ELLIOT KLAYMAN. (KLAYMAN, LARRY) (Entered: 01/10/2025) |
| 01/10/2025 | 18 | MOTION for Leave to File *Second Amended Complaint* by LARRY ELLIOT KLAYMAN. (KLAYMAN, LARRY) (Entered: 01/10/2025) |
| 01/14/2025 | 19 | Consent MOTION for Extension of Time to File Response/Reply as to 9 MOTION to Dismiss MOTION for Sanctions , 18 MOTION for Leave to File *Second Amended Complaint* by JULIA PORTER, HAMILTON P FOX, III, LAWRENCE BLOOM. (Attachments: # 1 Email exchange, # 2 Text of Proposed Order)(Machado, Leslie) (Entered: 01/14/2025) |
| 01/15/2025 | 20 | MOTION for Extension of Time to File Response/Reply as to 18 MOTION for Leave to File *Second Amended Complaint*, 7 MOTION to Dismiss *Lathrop Defendants'* by ERIC YAFFE, LATHROP GPM LLP.. (Attachments: # 1 Text of Proposed Order)(Landon, Richard) (Entered: 01/15/2025) |
| 01/23/2025 | | MINUTE ORDER. Upon consideration of the defendants' 19 Consent Motion of Julia Porter, Hamilton Fox, and Lawrence Bloom for Extension of Time to File their Reply in Support of Their Motion to Dismiss and Respond to Mr. Klayman's Motion to File a Second Amended Complaint, and for good cause shown, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that, on or before January 31, 2025, the defendants shall file their responses to both motions. Signed by Judge Reggie B. Walton on January 23, 2025. (lcrbw3) (Entered: 01/23/2025) |
| 01/23/2025 | | MINUTE ORDER. Upon consideration of the defendants' 20 Lathrop Defendants' Motion Seeking an Extension of Time to File Their Reply in Support of Their Motion to Dismiss and to Respond to Mr. Klayman's Motion to File a Second Amended Complaint, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that, on or before January 31, 2025, the defendants shall file their responses to both motions. Signed by Judge Reggie B. Walton on January 23, 2025. (lcrbw3) (Entered: 01/23/2025) |
| 01/31/2025 | 21 | REPLY to opposition to motion re 9 Motion to Dismiss,, Motion for Sanctions, filed by JULIA PORTER, HAMILTON P FOX, III, LAWRENCE BLOOM. (Machado, Leslie) (Entered: 01/31/2025) |
| 01/31/2025 | 22 | RESPONSE re 18 MOTION for Leave to File *Second Amended Complaint* filed by JULIA PORTER, HAMILTON P FOX, III, LAWRENCE BLOOM. (Machado, Leslie) (Entered: 01/31/2025) |
| 01/31/2025 | 23 | RESPONSE re 18 MOTION for Leave to File *Second Amended Complaint* filed by ERIC YAFFE, LATHROP GPM LLP.. (Landon, Richard) (Entered: 01/31/2025) |

| 01/31/2025 | 24 | REPLY to opposition to motion re 7 Motion to Dismiss filed by ERIC YAFFE, LATHROP GPM LLP.. (Landon, Richard) (Entered: 01/31/2025) |
| 08/19/2025 | 25 | GENERAL ORDER FOR CIVIL CASES BEFORE THE HONORABLE REGGIE B. WALTON. Signed by Judge Reggie B. Walton on August 19, 2025. (lcrbw3) (Entered: 08/19/2025) |
| 02/06/2026 | 26 | MEMORANDUM OPINION. Signed by Judge Reggie B. Walton on February 6, 2026. (lcrbw3) (Entered: 02/06/2026) |
| 02/06/2026 | 27 | ORDER. For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that the 7 Lathrop Defendants' Motion to Dismiss is GRANTED. It is further ORDERED that defendants 9 Julia Porter, Hamilton Fox, and Lawrence Bloom's Motion to Dismiss the Amended Complaint is GRANTED. It is further ORDERED that, on or before March 6, 2026, the ODC Defendants shall file a pleading accompanied by an affidavit attesting to any attorneys' fees for which they seek reimbursement. It is further ORDERED that the plaintiff's 18 Motion for Leave to File Second Amended Complaint is DENIED. It is further ORDERED that the Amended Complaint is DISMISSED. It is further ORDERED that the case is CLOSED. Signed by Judge Reggie B. Walton on February 6, 2026. (lcrbw3) (Entered: 02/06/2026) |
| 02/09/2026 | | Set/Reset Deadlines: The ODC Defendants shall file a pleading accompanied by an affidavit attesting to any attorneys' fees for which they seek reimbursement by 3/6/2026. (zalh) (Entered: 02/09/2026) |
| 03/06/2026 | 28 | MOTION for Attorney Fees by LAWRENCE BLOOM, SARA BLUMENTHAL, BOARD ON PROFESSIONAL RESPONSIBILITY, MARGARET CASSIDY, HAMILTON P FOX, III, THOMAS GILBERTSEN, WILLIAM HINDLE, OFFICE OF DISCIPLINARY COUNSEL, JULIA PORTER, SHARON RICE–HICKS, BERNADETTE SARGEANT, LESLIE SPIEGEL, MICHAEL TIGAR, ROBERT WALKER, ERIC YAFFE. (Attachments: # 1 Exhibit Declaration of Leslie Paul Machado, # 2 Text of Proposed Order)(Machado, Leslie) (Entered: 03/06/2026) |
| 03/07/2026 | 29 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 26 Memorandum & Opinion, 27 Order on Motion for Leave to File,,,, Order on Motion to Dismiss,,,,,,,, Order on Motion for Sanctions,,, by LARRY ELLIOT KLAYMAN. Filing fee $ 605, receipt number ADCDC–12285669. Fee Status: Fee Paid. (Attachments: # 1 Exhibit)(KLAYMAN, LARRY) (Entered: 03/07/2026) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN

               Plaintiff,

v.

JULIA PORTER et al

               Defendants.

**Case No.: 1:24-cv-02853- RBW**

## NOTICE OF APPEAL

    Plaintiff Larry Klayman hereby appeals to the U.S. Court of Appeals for the District of Columbia Circuit the February 6, 2026 Order of the Honorable Reggie Walton granting the Lathrop Defendants Motion to Dismiss, granting the Bar Defendants' Motion to Dismiss, denying Mr. Klayman's Motion for Leave to File Second Amended Complaint, and granting leave for the ODC Defendants to  pleading accompanied by an affidavit attesting to any attorneys' fees for which they seek reimbursement, Exhibit 1, and all other rulings and orders adverse to Plaintiff in this matter.

Date: March 7, 2026               Respectfully submitted,


               *____ /s Larry Klayman*
               Larry Klayman
               7050 W. Palmetto Park Rd
               Boca Raton, FL, 33433
               Tel: (561)-558-5336
               Email: leklayman@gmail.com

               Plaintiff Pro Se

**<u>CERTIFICATE OF SERVICE</u>**

I, Larry Klayman, hereby certify that on this day, March 7, 2026 a copy of the foregoing

was served counsel for all parties via the Court's ECF procedures.


_____*/s Larry Klayman*

1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LARRY KLAYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-2853 (RBW) |
| | ) | |
| JULIA PORTER, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER</u>

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Lathrop Defendants' Motion to Dismiss, ECF No. 7, is **GRANTED**.

It is further

**ORDERED** that defendants Julia Porter, Hamilton Fox, and Lawrence Bloom's Motion

to Dismiss the Amended Complaint, ECF No. 9, is **GRANTED**. It is further

**ORDERED** that, on or before March 6, 2026, the ODC Defendants shall file a pleading

accompanied by an affidavit attesting to any attorneys' fees for which they seek reimbursement.

It is further

**ORDERED** that the plaintiff's Motion for Leave to File Second Amended Complaint,

ECF No. 18, is **DENIED**.  It is further

**ORDERED** that the Amended Complaint is **DISMISSED**.  It is further

**ORDERED** that the case is **CLOSED**.

**SO ORDERED** this 6th day of February, 2026.


                                             REGGIE B. WALTON
                                             United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Civil Action No. 24-2853 (RBW)
                                        )
JULIA PORTER, <u>et al.</u>,            )
                                        )
                    Defendants.         )
                                        )

## MEMORANDUM OPINION

The plaintiff, Larry Klayman, an attorney proceeding <u>pro se</u>, brings this civil action against the (1) Office of Disciplinary Counsel ("ODC"), which serves as the chief prosecutor for attorney disciplinary matters involving members of the District of Columbia Bar (the "D.C. Bar"), and three of its members: Julia Porter; Hamilton Fox, III; and Lawrence Bloom (collectively the "ODC Defendants"); (2) the Board on Professional Responsibility ("the Board"), the disciplinary arm of the District of Columbia Court of Appeals ("D.C. Court of Appeals") responsible for the adjudication of disciplinary proceedings, and eight of its members: Bernadette Sargeant; Robert Walker; Sara Blumenthal; Margaret Cassidy; Thomas Gilbertsen; William Hindle; Sharon Rice-Hicks; Michael Tigar; and Leslie Spiegel (collectively the "Board Defendants"); and (3) Lathrop GPM LLP ("Lathrop"), a law firm that represents the Board, and one of its attorneys: Eric Yaffe (collectively the "Lathrop Defendants"), alleging tortious interference with his business relationships and contracts and a violation of his constitutional equal protection rights.  <u>See</u> Notice of Removal, Ex. C (District of Columbia Superior Court Complaint ("Am. Compl.")) at 1, ECF No. 1-3.

The plaintiff alleges that the defendants tortiously interfered with his business relationships and contracts by sending letters to jurisdictions where he is licensed to practice with information about his ongoing disciplinary proceedings in the District of Columbia and that they violated his constitutional rights by selectively prosecuting his disciplinary proceedings more harshly than other attorneys because of his race, gender, and political views.  Id. ¶¶ 48–59.

This is not the first time this plaintiff has sued these defendants for this same alleged misconduct.  See Klayman v. Porter, 104 F.4th 298, 301 (D.C. Cir. 2024).  The plaintiff previously filed three separate lawsuits against the ODC and its employees in federal district courts in Texas and California.  See Complaint, Klayman v. Porter, 20-cv-2526 (N.D. Tex. Aug. 26, 2020); Complaint, Klayman v. Porter, 20-cv-1014 (W.D. Tex. Oct. 2, 2020); Complaint, Klayman v. Kaiser, 20-cv-9490 (N.D. Cal. Dec. 31, 2020). [1]  In each of those cases, as here, the plaintiff alleged "that the ODC Employees were engaged in a politically motivated agenda aimed at removing him from the practice of law . . . and asserted that [they] tortiously interfered with his business relationships with his clients and constituted an unethical abuse of the attorney-discipline process." Klayman, 104 F.4th at 302.  In those other lawsuits, the ODC Defendants were deemed entitled to absolute immunity from the plaintiff's damages claims.  Id. at 303, 311 ("As he has been told before, absolute immunity shields the ODC Employees from his damages claims.").

Currently pending before the Court are (1) the Lathrop Defendants' Motion to Dismiss ("Lathrop Defs.' Mot.") at 1, ECF No. 7; (2) the ODC Defendants' Motion to Dismiss The Amended Complaint, which includes a request for sanctions, ("ODC Defs.' Mot") at 1, ECF No. 9; and (3) the plaintiff's Motion For Leave To File  Second Amended Complaint ("Pl.'s Mot. to

---

[1] Those three cases were transferred to this Court and were consolidated as Civil Action No. 20-3109 (RBW).

Amend") at 1, ECF No. 18.  Upon careful consideration of the parties' submissions,[2] the Court

concludes for the following reasons that it must (1) grant the Lathrop Defendants' motion to

dismiss; (2) grant the ODC Defendants' motion to dismiss; (3) grant the ODC Defendants'

request for sanctions; and (4) deny the plaintiff's motion for leave to file a second amended

complaint.

## I.    BACKGROUND

The Court previously set forth on several occasions the lengthy factual background

surrounding the plaintiff's history of litigation against the ODC, see Klayman v. Porter, Nos. 20-

cv-3109, 20-cv-3579, 21-cv-965, 2022 WL 3715775, at *1–4 (D.D.C. Aug 29, 2022) (Walton,

J.); Klayman v. Porter, No. 22-cv-953, 2023 WL 2496738, at *1–2 (D.D.C. Mar. 14, 2023)

(Walton, J.), and therefore will not reiterate it again here.  As it has done before in the plaintiff's

cases, the Court will set forth the factual allegations and procedural background specific to this

case and then the resolution of the pending motions.

### A.    Factual Background

This case arises out of what the plaintiff calls the "Bundy Matter," a 2019 disciplinary

proceeding involving the plaintiff's attempt to be admitted pro hac vice in the United States

District Court for the District of Nevada to represent Cliven Bundy.  See Am. Compl. ¶¶ 28, 32;

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Lathrop Defendants' Memorandum In Support Of Motion To Dismiss ("Lathrop Defs.' Mem."), ECF No. 7-1; (2) Julia Porter, Hamilton Fox, and Lawrence Bloom's Memorandum of Law In Support Of Their Motion To Dismiss The Amended Complaint ("ODC Defs.' Mem."), ECF No. 9-1; (3) the Plaintiff's Opposition To Defendants Julia Porter, Hamiton Fox, and Lawrence Bloom's Motion To Dismiss Amended Complaint And Cross Motion for Sanctions ("Pl.'s ODC Opp'n"), ECF No. 16; (4) the Plaintiff's Opposition To Defendants Eric Yaffe And Lathrop GPM LLP's Motion To Dismiss Amended Complaint ("Pl.'s Lathrop Opp'n"), ECF No. 17; (5) the Lathrop Defendants' Reply Memorandum In Support Of Motion To Dismiss ("Lathrop Defs.' Reply"), ECF No. 24; (6) Julia Porter, Hamilton Fox, and Lawrence Bloom's Reply Memorandum Of Law In Support Of Their Motion To Dismiss The Amended Complaint ("ODC Defs.' Reply"), ECF No. 21; (7) the Lathrop Defendants' Opposition To Plaintiff's Motion For Leave To File A Second Amended Complaint ("Lathrop Defs.' Opp'n to Second Am. Compl."), ECF No. 23; and (8) Julia Porter, Hamilton Fox, and Lawrence Bloom's Opposition To Plaintiff's Motion For Leave To File Second Amended Complaint ("ODC Defs.' Opp'n to Second Am. Compl."), ECF No. 22.

In re Larry Klayman, 340 A.3d 1212 (D.C. 2025).  In the Bundy Matter, the ODC charged the plaintiff with violating several Rules of Professional Conduct because he inadequately disclosed his disciplinary history in his application for pro hac vice admission in the District of Nevada. Id. at 1216.  The Board ultimately issued a Report and Recommendation to the D.C. Court of Appeals recommending that the plaintiff "be suspended for eighteen months with a fitness requirement" prior to reinstatement.  Id. at 1221.  The plaintiff appealed that recommendation, see generally id., and while that appeal was pending before the District of Columbia Court of Appeals, he filed this action.[3]  According to the plaintiff, the "Board Defendants and Yaffe ha[d] worked together . . . with the ODC Defendants . . . to prematurely issue their non-binding Report and Recommendation . . . with the understanding and agreement that the ODC Defendants would then use it to try to harm [his] ability to practice law in foreign jurisdictions and courts."  Am. Compl.  ¶ 35.

The plaintiff claims that defendant Fox, as ODC Disciplinary Counsel, has "made a point to personally try disciplinary complaints against white male pro-Trump conservative and Republican individuals, despite the fact that the chief disciplinary counsel generally does not perform that function."  Id. ¶ 21.  The plaintiff claims that defendant Porter, who the plaintiff describes as "Defendant Fox's deputy bar counsel," "engage[s] in unethical and dishonest conduct, as evidenced by her crusade to have . . . J.P. [Szymkowicz,] . . . the only white male conservative Republican member of the D.C. city government — removed from the practice of law on a contrived and fraudulent bar disciplinary proceeding," id. ¶ 22, and defendant Bloom

---

[3] The District of Columbia Court of Appeals issued a decision on August 7, 2025, "adopt[ing] the Board's recommended sanction that [the plaintiff] be suspended for eighteen months and demonstrate his fitness to practice law as a condition of his reinstatement to [the D.C. Bar]."  In re Larry Klayman, 340 A.3d at 1215–16 .  As far as the Court is aware, that decision concluded the disciplinary proceedings that underlie the current lawsuit.

"slavishly carries out the illegal and unethical orders of Defendants Fox and Porter and acts in concert with them to do so," id. ¶ 23.

The plaintiff makes no specific claims against the individual Board members, but claims that the Board Defendants and the Lathrop Defendants "work together in concert with the ODC Defendants to carry out the illegal and unethical agenda of attempting to remove prominent conservative and Republican activist and mostly white male attorneys from the practice of law." Id. ¶ 24. Such actions, the plaintiff contends, are a violation of 42 U.S.C. § 1983, because they subject him to "unconstitutional discriminatory and disparate treatment . . . as a result of hi[m] being a white male, prominent conservative and Republic activist attorney." Id. ¶ 59. To date, the plaintiff has not served the Board Defendants with a copy of the Amended Complaint, see Notice of Removal, Ex. E (Service email exchange) at 1, ECF No. 1-5, and the Board Defendants have therefore not entered an appearance in this litigation.

The plaintiff asks the Court to award him compensatory and punitive damages and to enter a preliminary and permanent injunctions against the ODC Defendants from presiding over his petition for reinstatement to the D.C. Bar following a suspension imposed in a different disciplinary matter and against all defendants from sending copies of the Board's non-final Report and Recommendation in the Bundy Matter to any third-parties to vindictively harm and maliciously damage the plaintiff and his clients. Am. Compl. at 18.

**B.     Procedural Background**

The plaintiff filed his Complaint in this civil action in the Superior Court of the District of Columbia on August 28, 2024, alleging that Defendants Porter, Bloom, and Fox tortiously interfered with his business relationships and violated his constitutional rights under 42 U.S.C. § 1983. The plaintiff filed an Amended Complaint, which added as defendants the ODC, the

Board, the Board Defendants, and the Lathrop Defendants, on September 6, 2024.  Subsequently,

on October 7, 2024, the defendants removed the case to this Court.  See  Notice of Removal,

ECF No. 1.

On October 15, 2024, the Lathrop Defendants filed their motion to dismiss pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, see Lathrop Defs.' Mot. at 1, asserting

that the plaintiff had not stated a claim for tortious interference against them, see Lathrop Defs.'

Mem. at 1.  On November 1, 2024, the ODC Defendants filed their motion to dismiss the

Amended Complaint, which includes a request for sanctions.  See ODC Defs.' Mot. at 1.  The

ODC Defendants argue (1) that the ODC and the Board, as instrumentalities of the D.C. Court of

Appeals, are not capable of being sued, (2) that the Court should dismiss both counts of the

Amended Complaint for failure to state a claim, (3) that the ODC and the Board Defendants have

qualified immunity from the plaintiff's damages claims because they undertook legitimate

disciplinary and enforcement actions taken in their official capacities, and (4) that the Court

should dismiss the plaintiff's request for injunctive relief based on Younger abstention, which

generally requires federal courts to abstain from enjoining ongoing state proceedings.  See ODC

Defs.' Mem. at 19–22; Younger v. Harris, 401 U.S. 37, 43–45 (1971).  The ODC Defendants

also request that the Court impose sanctions against the plaintiff pursuant to Federal Rule of

Civil Procedure 11, 18 U.S.C. § 1927, and the Court's inherent authority because the claims filed

against them are frivolous.  See ODC Defs.' Mem. at 34–35.

On January 10, 2025, the plaintiff filed a motion for leave to file a Second Amended

Complaint, see Pl.'s Mot. for Second Am. Compl. at 1; an opposition to the Lathrop Defendants'

motion to dismiss, see Pl.'s Lathrop Opp'n at 1; and an opposition to the ODC Defendants'

motion to dismiss, see Pl.'s ODC Opp'n at 1.  On January 31, 2025, the Lathrop Defendants and

the ODC Defendants filed separate oppositions to the plaintiff's request for leave to file a second amended complaint. See Lathrop Defs.' Opp'n to Second Am. Compl. at 1; ODC Opp'n to Second Am. Compl. at 1. That same day, they also filed reply memorandums in support of their motions to dismiss the Amended Complaint. See Lathrop Defs.' Reply at 1; ODC Defs.' Reply at 1.

## II.    STANDARDS OF REVIEW

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual

7

allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the

facts set out in the complaint[.]"  Hettinga, 677 F.3d at 476.  The Court "may consider only the

facts alleged in the complaint, any documents either attached to or incorporated in the

complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp.

Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**B.    Motion for Leave to File an Amended Complaint**

Under Federal Rule of Civil Procedure 15(a)(2), the Court "should freely give leave" to a

party to amend his pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  When

considering a motion for leave to amend, the Supreme Court has instructed federal courts to

consider the following factors: (1) whether there has been undue delay in the filing of the

motion; (2) whether the movant has acted with bad faith or dilatory motive; (3) whether there has

been "repeated failures to cure deficiencies by amendments previously allowed"; (4) whether

there would be undue prejudice to the opposing party by virtue of permitting an amendment; and

(5) whether permitting the amendment would be futile.  Foman v. Davis, 371 U.S. 178, 182

(1962).  "The burden is on the defendant to show that leave to file an amended complaint should

be denied."  Afram. v. United Food & Com. Workers Unions & Participating Emps. Health &

Welfare Fund, 958 F. Supp. 2d 275, 278 (D.D.C. 2013) (citing Smith v. Café Asia, 598 F. Supp.

2d 45, 48 (D.D.C. 2009)).

**C.    Motions for Sanctions**

Under "[Federal Civil Procedure] Rule 11[,] sanctions may be imposed where a party

files a pleading, motion[,] or other paper with the court for an improper purpose, that is

unwarranted by existing law, [ ] that is lacking evidentiary support[,]" Henok v. Chase Home

Fin., LLC, 926 F. Supp. 2d 100, 104 (D.D.C. 2013) (citing Fed. R. Civ. P. 11(b)(1)–(3)), or that

8

is not "reasonably based on belief or a lack of information," Fed. R. Civ. P. 11(b)(4). "Rule 11

sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings."

Brown v. FBI, 873 F. Supp. 2d 388, 408 (D.D.C. 2012) (citing Wasserman v. Rodacker, No. 06-

cv-1005 (RWR), 2007 WL 2071649, at *7 (D.D.C. July 18, 2007)). Although "'the district court

is accorded wide discretion' in determining whether sanctions are appropriate," Gomez v.

Aragon, 705 F. Supp. 2d 21, 23 n.2 (D.D.C. 2010) (quoting Westmoreland v. CBS, Inc., 770

F.2d 1168, 1174 (D.C. Cir. 1985)), the test "under Rule 11 is an objective one: that is, whether a

reasonable inquiry would have revealed that there was no basis in law or fact for the asserted

claim," Sharp v. Rosa Mexicano, D.C., LLC, 496 F. Supp. 2d 93, 100 (D.D.C. 2007) (citing

Reynolds v. U.S. Capitol Police Bd., 357 F. Supp. 2d 19, 23 (D.D.C. 2004)). A motion for

sanctions under Rule 11 "must be made separately from any other motion and must describe the

specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).

     Additionally, under Section 1927, a court may impose sanctions against an attorney who

"multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.

Moreover, a federal court has the "inherent authority to impose sanctions necessary to achieve

the orderly and expeditious disposition of cases before it." Hall v. Dep't of Homeland Sec., 219

F. Supp. 3d 112, 119 (D.D.C. 2016), aff'd sub nom. Hall v. Dettling, No. 17-7008, 2017 WL

2348158 (D.C. Cir. May 17, 2017) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 46–47

(1991).

D.    <u>Pro Se</u> **Plaintiffs**

The Court is mindful of the fact that the plaintiff, while also a practicing attorney, is proceeding <u>pro se</u>.[4]  The pleadings of <u>pro se</u> parties are "to be liberally construed, . . . and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  Furthermore, all factual allegations by a <u>pro se</u> litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a motion to dismiss.  <u>See</u> <u>Richardson v. United States</u>, 193 F.3d 545, 548 (D.C. Cir. 1999).  Nonetheless, a "pro se complaint, like any other, must present a claim upon which relief can be granted by the court."  <u>Crisafi v. Holland</u>, 655 F.2d 1305, 1308 (D.C. Cir. 1981).  Moreover, on a motion for sanctions, a <u>pro se</u> litigant with formal legal training is held to a higher standard than other <u>pro se</u> litigants.  <u>See</u> <u>Stankevich v. Kaplan</u>, 156 F. Supp. 3d 86, 100 (D.D.C. 2016).

### III.    ANALYSIS

The Court will first assess the ODC Defendants' argument that the ODC and the Board are not capable of being sued.  The Court will then determine whether the individual ODC Defendants and Board Defendants are immune from the plaintiff's claims for damages before assessing whether the <u>Younger</u> abstention doctrine applies.  Because the Court ultimately concludes that <u>Younger</u> does not apply in this case, the Court will then consider whether Count One and Count Two of the Amended Complaint survive the defendants' motions.  The Court will

---

[4] The Court questions whether, in light of the plaintiff's status as an attorney, it is compelled to apply the liberal <u>pro se</u> standard.  <u>Klayman v. Porter</u>, No. CV 20-3109 (RBW), 2025 WL 2938701, at *3 (D.D.C. Oct. 16, 2025). Nonetheless, out of an abundance of caution, the Court will do so.  <u>See</u> <u>id.</u>

then decide whether the plaintiff should be permitted to file a second amended complaint before finally turning to the ODC Defendants' request for sanctions.

## A.    Whether the ODC and the Board are Capable of Being Sued

The ODC and the Board are, by the plaintiff's own admissions, instrumentalities of the D.C. Court of Appeals.  Am. Compl. ¶¶ 5–6.  "[T]he overwhelming weight of precedent in this Circuit . . . holds that[,] in the absence of explicit statutory authorization, bodies within the District of Columbia government are not suable as separate entities."  Klayman v. Fox, 18-cv-1579 (RDM), 2019 WL 2396538 at *11 (D.D.C. 2019) (emphasis omitted) (citing Newman v. District of Columbia Courts, 125 F. Supp. 3d 95, 102–03 (D.D.C. 2015)); see also Hoai v. Superior Ct. of the Dist. of Columbia, 539 F. Supp. 2d 432, 435 (D.D.C. 2008) ("[N]aming the D.C. courts, and their components, as defendants does not save plaintiffs' claims because those entities are non sui juris.").  The plaintiff does not identify any statutory authorization that would permit him to sue the ODC or the Board, nor does he even respond to the ODC Defendants' argument that the ODC and the Board are incapable of being sued.  Accordingly, the plaintiff has conceded the point.  See Stevenson v. District of Columbia, 639 F. Supp. 3d 117, 128 (D.D.C. 2022) ("The plaintiff did not respond to this argument. Therefore, the argument will be treated as conceded." (citation omitted)); see also Klayman, 2019 WL 2396538 at *11.  The Court will therefore dismiss the claims against the ODC and the Board.

## B.    Whether the Individual ODC Defendants and the Individual Board Defendants Are Immune to the Plaintiff's Claims for Damages

The individual ODC Defendants argue that both they and the individual Board Defendants are "absolutely immune from [the] plaintiff's claims" because "[a]ll of [the] plaintiff's allegations relate to conduct these defendants allegedly engaged in during the course

of their official duties [related to] prosecuting disciplinary matters and informing jurisdictions about disciplinary decisions (in regards to the ODC Defendants) and adjudicating discipline matters (in regards to the Board Defendants)."  ODC Defs.' Mem. at 21.  In support of this argument, the ODC Defendants cite Klayman v. Porter, where the District of Columbia Circuit held, in a suit brought by the plaintiff against these same defendants, that "D.C. officials charged with disciplining individuals engaged in the unauthorized practice of law are entitled to the protection of absolute immunity," provided that their activities are "not manifestly beyond [their] authority."  104 F.4th at 311 (internal quotations and citations omitted); see ODC Defs.' Mem. at 20–21.

The ODC Defendants' actions in this case were nearly identical to their actions in the plaintiff's earlier lawsuits.  In the prior case, as here, nothing in the plaintiff's allegations establishes that the ODC Defendants' actions were "manifestly beyond [their] authority."  See id. To the contrary, as here:

> the ODC Employees' decision to send ex parte letters was not manifestly beyond their discretion in carrying out their official duties.  The D.C. Bar Rules generally allow them to communicate with other jurisdictions about informal disciplinary matters.  The ODC Employees' judgment that they equally have the authority to inform other jurisdictions about formal charges was the type of decision that is not manifestly beyond their discretion.  Indeed, the American Bar Association Model Rules for Lawyer Disciplinary Enforcement contemplate that disciplinary proceedings will result in notice letters like those the ODC Employees sent.

Id.  (internal quotations and citations omitted).  The same analysis applies to the Board Defendants' actions being challenged in this case by the plaintiff.  See id. at 302 (defining the "ODC Employees" to include the Chair of the Board).  Thus, the Court concludes that the ODC Defendants and the Board Defendants are entitled to absolute immunity from the plaintiff's damages claims.

C.      **Whether <u>Younger</u> Abstention Applies**

The Court will next consider whether it must abstain from considering the plaintiff's claims for injunctive relief.  The ODC Defendants argue that the Court should "abstain from interfering with the pending D.C. proceedings" pursuant to the <u>Younger</u> abstention doctrine. ODC Defs.' Mem. at 22.  "In <u>Younger v. Harris</u> and its progeny, the Supreme Court held that, except in extraordinary circumstances, a federal court should not enjoin a pending state proceeding (including an administrative proceeding) that is judicial in nature and involves important state interests."  <u>JMM Corp. v. District of Columbia</u>, 378 F.3d 1117, 1120 (D.C. Cir. 2004).  Under the <u>Younger</u> abstention doctrine, "[f]ederal-court abstention from interference with pending state proceedings (including D.C. proceedings) is appropriate if there is no showing of bad faith, harassment, or some other extraordinary circumstance on the part of the state that would make abstention inappropriate."  <u>Klayman</u>, 104 F. 4th at 312 (internal quotations and citations omitted).

The plaintiff argues that the <u>Younger</u> abstention doctrine "is not implicated here because the actual disciplinary proceeding, the Bundy Matter, is unaffected in this case by the relief sought in the Amended Complaint," and "even if the <u>Younger</u> abstention doctrine were applicable, . . . the 'bad-faith' exception would apply."  Pl.s' Opp'n to ODC Defs.' Mot. at 12–13.  The "bad-faith" alleged by the plaintiff is that the ODC actions in "the Bundy Matter constitute an egregious violation of Rule 12.2 [of the D.C. Court of Appeals Board on Professional Responsibility Board Rules] [and] the sending of <u>ex parte</u> copies of a non-binding preliminary Board Report can only be described as being in total 'bad faith,' and much more, unconstitutional and illegal."  <u>Id.</u> at 13.  These allegations, which closely resemble those the plaintiff unsuccessfully made in his previous lawsuits against the ODC, are conclusory and

otherwise insufficient to establish "bad faith."  See Klayman v Lim, 830 F. App'x 660, 663 (D.C. Cir. 2020) (rejecting the plaintiff's claims that the ODC acted in bad faith when he "made no substantial, nonconclusory allegations that the Disciplinary Counsel defendants have pursued the matters with[out] any expectation of sustaining the charges against him") (internal quotations omitted).

Nonetheless, the Younger abstention doctrine applies only to "pending state proceedings," and it appears to the Court that the Bundy Matter is no longer pending.  See In re Klayman, 340 A.3d at 1215–16 (accepting the Board's recommendation of an eighteen-month suspension with a fitness requirement for reinstatement).  Although the gravamen of the plaintiff's allegations in this case derives from the Bundy Matter, his Amended Complaint also seeks injunctive relief to prevent the ODC Defendants from presiding over the plaintiff's re-instatement in what the plaintiff identified as the "Sataki Matter," Am. Compl. at 18, which also appears to the Court to no longer be pending, see ODC Defs.' Mem. at 6–7; In re Klayman, 282 A.3d 584, 598 (D.C. 2022) (suspending the plaintiff from the practice of law in the District of Columbia for eighteen months with reinstatement conditioned on his demonstrating fitness to practice law).

It appearing to the Court that the Bundy and Sataki matters are no longer pending, the Court finds that Younger abstention does not apply.  See Klayman, 104 F. 4th at 312 ("Younger abstention was not warranted in this case for the straightforward reason that there was no relevant pending state proceeding at the time of the district court's decision.").  Therefore, the Court will proceed to assess whether the plaintiffs two counts survive the defendants' Rule 12(b)(6) challenges.

D.    **Whether Count One States a Claim**

Because the Court need not abstain from considering the plaintiff's claims for relief in

Count One, the question becomes whether the plaintiff has adequately stated any claims upon

which relief could be granted.  In Count One, the plaintiff alleges that all defendants "willfully

and intentionally and maliciously interfered with [his] ongoing clients and business

relationships."  Am. Compl. ¶ 51.  A plaintiff alleging tortious interference must show: "(1)

existence of a valid contractual or other business relationship; (2) the defendant's knowledge of

the relationship; (3) intentional interference with that relationship by the defendant;[5] and (4)

resulting damages."[6]  Headfirst Baseball LLC v. Elwood, No. 13-cv-536, 2014 WL 12784419, at

*5 (D.D.C. Oct. 23, 2014) (Walton, J.) (citing Onyeoziri v. Spivok, 44 A.3d 279, 286 (D.C.

2012).  Allegations of interference with "unspecified relationships" are inadequate to plead the

existence of a business relationship.  Williams v. Fed. Nat. Mortg. Ass'n, No. 05-cv-1483 (JDB),

2006 WL 1774252, at *8 (D.D.C. June 26, 2006); see also Sharpe v. Am. Acad. of Actuaries,

285 F. Supp. 3d 285, 292 (D.D.C. 2018) (requiring the plaintiff to "plead the specific contracts or

expectancies that the [p]laintiff claims were interfered with").  Therefore, "generic allegations

about the existing and prospective business relations affected are insufficient to plead plausibly

---

[5] As explained in Intelsat USA Sales Corp. v. Juch-Tech. Inc., 935 F. Supp. 2d 101, 115–16 (D.D.C. 2013), there is
an inconsistency in the District of Columbia case law as to whether this element requires an actual breach of
contract.  The Court in Intelsat opined that it does not, and because this Court continues to find the Court's
reasoning in Intelsat well-founded, this Court will not require that a specific breach of contract be pleaded. See
Onyeoziri, 44 A.3d at 286 ("To be actionable, the interference need not cause an actual breach of the business
relationship, but instead may cause 'merely a failure of performance' by one of the parties.") (quoting Casco Marina
Dev., L.L.C. v. D.C. Redevelopment Land Agency, 834 A.2d 77, 84 (D.C. 2003)).

[6] The plaintiff alleges only the interference with "ongoing business relationships and/or contracts."  He does not
allege any tortious interference with "prospective" business relationships, which is a separate but related claim.  See
Headfirst Baseball LLC, 2014 WL 12784419 at *5.  Even if the plaintiff had alleged tortious interference with
"prospective" business relationships, such allegation would fail because "[a] claim of tortious interference with
prospective business relations cannot survive where the plaintiff does not allege any specific future business
relations or expectancies and only provides general references to potential opportunities." Id. (quoting Xereas v.
Heiss, 933 F. Supp. 2d 1, 10 (D.D.C. 2013)).

tortious interference in the District [of Columbia]." Precision Contracting Sols., LP v. ANGI Homeservices, Inc., 415 F. Supp. 3d 113, 124 (D.D.C. 2019).

Here, the plaintiff without any specificity claims that that he has "ongoing business relationships and/or contracts with clients and courts in numerous jurisdictions where he is licensed to practice law, including but not limited to the United States Court of Appeals for the Fifth Circuit in an appeal for an important client." Am. Compl. ¶ 49. The plaintiff also surmises that the defendants had knowledge of these contractual or business relationships, id. ¶ 50, because such knowledge is "the only possible reason for them to have sent out ex parte letters," Pl.'s ODC Opp'n at 14.

What the plaintiff has alleged is precisely the type of "generic allegation[]" that is insufficient to support a tortious interference claim. See Precision Contracting Sols., LP, 415 F. Supp. 3d at 124. The Amended Complaint is silent on the existence of any specific "valid contractual or other business relationship" with clients in the Fifth Circuit or elsewhere.[7] See Headfirst Baseball LLC, 2014 WL 12784419 at *5. The plaintiff's allegations about the existence of a contractual or business relationship are at best conclusory and, therefore, insufficient to support a tortious interference claim. See Iqbal, 556 U.S. at 679. Without identifying the existence of a contractual or business relationship, the plaintiff cannot possibly allege the remaining elements of the claim: the defendant's knowledge of that relationship; the defendant's intentional interference with that relationship; and the resulting damages. See id.

---

[7] In his proposed Second Amended Complaint, the plaintiff alleges that the Fifth Circuit contacted him "shortly before the oral argument that [he] was scheduled to argue . . . on October 8, 2024" in apparent response to its receipt of the Report and Recommendation. See Plaintiff's Proposed Second Amended Complaint at ¶ 34, ECF No. 18. As discussed further below, the Court denies the plaintiff's request for leave to file the Second Amended Complaint in part because this allegation regarding the Fifth Circuit is still insufficient to show tortious interference with a specific business relationship because, as the ODC defendants point out, the plaintiff did in fact appear before the Fifth Circuit even after that court "contact[ed]" him and therefore no business relationship in regards to that matter was interfered with. See ODC Defs.' Reply at 10.

Having failed to adequately allege a claim of interference with a contractual or business relationship, the tortious interference claim must be dismissed.[8]  Although the Board Defendants have not been properly served and thus have not appeared in this litigation, the Court nonetheless finds for the same reasons Count One fails to state an offense against the ODC Defendants and Lathrop Defendants, that it also fails to state a claim against the Board Defendants.  The Court will therefore sua sponte dismiss the count against the Board Defendants as well.  See Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C. Cir. 1990) (noting that the Court may dismiss a complaint sua sponte under Rule 12(b)(6) if "it is patently obvious" that the plaintiff cannot "prevail[] on the facts alleged in his complaint").

**E.    Whether Count Two States a Claim under 42 U.S.C. § 1983**

The plaintiff's Section 1983 claim is rooted in his belief that the ODC Defendants and the Board Defendants are engaged in an "agenda of attempting to remove prominent conservative and Republican activist and mostly white male attorneys from the practice of law."  Am. Compl. ¶ 24.  He alleges these defendants violated his Fourteenth Amendment right to equal protection of the laws by "selective[ly] prosecut[ing]" him and similarly situated white male conservative Republican attorneys differently than they do other attorneys.[9]  Id. ¶¶ 29–30, 54–59.

---

[8] The Lathrop Defendants also note that the plaintiff only generally accuses the defendants of having "conspired" and argue that, to the extent the plaintiff alleges a conspiracy, he also fails to a state claim on that ground.  See Lathrop Defs.' Mem. at 8.  The Court need not address this issue because the plaintiff himself responds that "[t]he cause of action is for tortious interference, not civil conspiracy.  The elements that must be shown are for tortious interference, not civil conspiracy."  Pls.' Lathrop Opp'n at 8.

[9] Although Count Two names "each and every[]one" of the defendants, Am Compl. ¶ 56, the Lathrop Defendants are private citizens plainly beyond the reach of the plaintiff's alleged constitutional deprivations.  See Lindke v. Freed, 601 U.S. 187, 194 (2024) ("As its text makes clear, [Section 1983] protects against acts attributable to a State, not those of a private person.").  The Lathrop Defendants appear to read Count Two to apply only to the ODC Defendants and the Board Defendants. See Lathrop Defs.' Mot (moving to dismiss only the tortious interference claim).  The plaintiff seems to agree in his opposition to the Lathrop Defendants' motion to dismiss, where he fails to mention Section 1983 but maintains only that he has properly pleaded a tortious interference claim against the Lathrop Defendants.  Pl.'s Lathrop Opp'n at 7.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). Here, the plaintiff claims the defendants violated his Fourteenth Amendment rights, but the Fourteenth Amendment applies only to the states, and the District of Columbia, of course, is not a state. See Bolling v. Sharpe, 347 U.S. 497, 498–99 (1954), supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan., 349 U.S. 294 (1955) ("The Fifth Amendment, which is applicable in the District of Columbia, does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states.").

The defendants do not contest the source of the plaintiff's right but, rather, argue that he has not stated a claim of selective enforcement.[10] To state a claim for selective enforcement, a plaintiff "must establish two factors: that (1) [he was] singled out for prosecution from among others similarly situated and (2) [the] prosecution was improperly motivated, i.e., based on race, religion or another arbitrary classification." Mahoney v. Capitol Police, 566 F. Supp. 3d 1, 13–14 (D.D.C. 2022) (internal quotations and citations omitted). Because the same analysis would apply to either a Fifth Amendment or a Fourteenth Amendment selective enforcement claim, the Court will proceed under this framework.

"Selective enforcement claims require courts to separate unlawful discrimination from the ordinary and lawful exercise of prosecutorial discretion." Frederick Douglass Found. v.

_____

[10] Although the plaintiff alleges he was "selectively prosecut[ed,]" given the nature of the ODC's role the Court believes it is more accurate to refer to this as a "selective enforcement" claim. In any event, the standard for both claims is identical. See Branch Ministries v. Rossotti, 211 F.3d 137, 144 (D.C. Cir. 2000) ("To establish selective prosecution, the [plaintiff] must "prove that (1) [he] was singled out for prosecution from among others similarly situated and (2) that [the] prosecution was improperly motivated, i.e., based on race, religion or another arbitrary classification.").

18

District of Columbia, 82 F.4th 1122, 1136 (D.C. Cir. 2023). "Because selective enforcement

claims risk invading the 'special province of prosecutorial discretion,' the Supreme Court has

emphasized 'that the standard for proving them is particularly demanding.'" Id. at 1137 (ellipsis

omitted) (quoting Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 489

(1999). Accordingly, "there is a strong presumption that prosecutors act lawfully when carrying

out their duties," and therefore "[t]o displace that presumption and state a claim, a plaintiff must

plausibly allege that there are 'no distinguishable legitimate prosecutorial factors that might

justify making different prosecutorial decisions with respect to [the plaintiff].'" Valibeigi v.

District of Columbia, No. 22-cv-3149 (TJK), 2024 WL 4332626 at *3 (D.D.C. Sept. 27, 2024)

(citation omitted). Thus, when conducting a selective enforcement analysis, courts must

consider "the relevant prosecutorial factors [which] may include 'the strength of the case, the

prosecution's general deterrence value, the Government's enforcement priorities, and the case's

relationship to the Government's overall enforcement plan.'" Frederick Douglass Found., 82

F.4th at 1137 (quoting Wayte v. U.S., 470 U.S. 598, 607 (1985)).

To show that he was the subject of selective enforcement because he is a "conservative,

Republican white male attorney," Am. Compl. ¶ 47, the plaintiff provides examples of two other

attorneys[11] who he claims the ODC treated less harshly than they treated him. Id. ¶¶ 29–30. The

plaintiff provides the following personal summaries of these two lawyers' alleged misconduct:

(1) David Kendall was allegedly involved in then-Secretary of State Hillary Clinton's retention

of emails on a private server and (2) Kevin Clinesmith was alleged to have been involved in a

---

[11] The plaintiff also criticizes the ODC Defendants for their treatment of John Szymkowicz, who he describes as "the only white male conservative Republic member of the D.C. city government." Am. Compl. ¶ 22. But the plaintiff offers so few details about Mr. Szymkowicz's alleged misconduct or treatment by the ODC Defendants that the Court is unable to draw any inferences about how or why his example supports the plaintiff's selective enforcement claim.

scandal involving surveillance pursuant to the Foreign Intelligence Surveillance Act during the

Federal Bureau of Investigation's Crossfire Hurricane investigation in 2016.[12]  Id.  According to

the plaintiff, when investigating these two lawyers, the Board either took no action or acted too

leniently.  Id.  But the plaintiff has not shown how either of these two lawyers' purported

misconduct was similarly situated to his situation, other than showing that they are all attorneys

licensed to practice law in the District of Columbia.[13]  As the ODC Defendants note, the plaintiff

"does not allege, for example, that [Mr. Kendall and Mr. Clinesmith] lied on a pro hac

application, made disparaging and baseless claims that federal judges were politically biased,

acted in direct contravention to their client's wishes, or violated numerous conflict of interest

rules."  ODC Defs.' Mem. at 26.

    Accepting as true the plaintiff's claims, Mr. Clinesmith "dishonestly falsified a

surveillance document [and] [ ] pled guilty to felony charges," and the ODC "temporarily

suspended [him] for five months after he pled guilty," and did not impose a reinstatement

provision.  Am. Compl. ¶ 30.  Rather than making any comparisons "across the relevant

prosecutorial factors," Valibeigi, 2024 WL 4332626 at *3 (quoting Frederick Douglass Found.,

Inc., 82 F. 4th at 1137), the plaintiff provides only conclusory commentary that the ODC "fast-

track[ed] if not whitewash[ed] [Mr. Clinesmith's] case [and] let [Mr.] Clinesmith off with barely

a slap on the wrist[,]" Am. Compl. ¶ 30.  The plaintiff's attempt to show Mr. Kendall is similarly

situated to him is even thinner.  The only facts the plaintiff alleges about Mr. Kendall are that he

"admitted involvement in the destruction of Hillary Clinton's 33,000 emails, many classified,

---

[12] The plaintiff describes Mr. Kendall as a "Democrat leftist lawyer," id. ¶ 20, and Mr. Clinesmith as an "anti-Trump partisan," id. ¶ 30, to suggest that they are not similar to him in regards to their politics, but he provides no proof of their political views and therefore his positions are speculative.

[13] According to the ODC Defendants, Kendall and Clinesmith are also "both white males."  ODC Defs.' Mem. at 26 n.9.  Although this may be another similarity between them and the plaintiff, these characteristics actually undermine the plaintiff's argument that he received less favorable treatment because of his race and gender.

and illegally retained on a private server" and the "ODC summarily and quickly rejected a complaint" against him.  Id. ¶ 29.  Had the plaintiff attempted make comparisons based on the relevant prosecutorial factors, it is not difficult to imagine why the ODC may have treated the three cases differently.  There could easily be different ODC enforcement priorities employed against a lawyer in Mr. Clinesmith's situation who was already criminally convicted of a felony as compared to someone in the plaintiff's situation who was not facing any criminal discipline. The ODC could also determine that there is different deterrent value in disciplining someone with a disciplinary history, like the plaintiff, than someone facing their first allegation of professional misconduct.  And, given the plaintiff's characterization of Mr. Kendall's misconduct, the Court can envision why the ODC may have considered the strength of the case against him or the Government's overall enforcement plan a sufficient reason for not pursuing disciplinary proceedings.

Because the plaintiff has not established that he was singled out for selective enforcement by the ODC as compared to others who he contends have been similarly situated, the Court need not assess whether the enforcement against him was improperly motivated.  Nonetheless, there is nothing in the plaintiff's pleadings to show that the ODC Defendants or the Board Defendants were motivated by invidious discrimination when pursuing their case against him.  Rather, the available evidence shows that "the ODC filed charges against [the] plaintiff, and the Board recommended sanctions against [the] plaintiff, for his violations of the Rules of Professional Conduct [and] . . . not because [the] plaintiff is a white male or a conservative lawyer, but because he violated numerous Rules numerous times."  ODC Defs.' Mem. at 2.  Count Two therefore does not state a claim and must be dismissed.  And, as noted above, although the Board Defendants have not been properly served and thus have not entered an appearance in this

litigation, the Court nonetheless finds for the same reasons Count Two fails to state an offense

against the ODC Defendants, it also fails to state a claim against the Board Defendants. The

Court will therefore <u>sua sponte</u> dismiss the count against the Board defendants as well.

**F.    Whether the Plaintiff Should Be Granted Leave to File a Second Amended**

**Complaint**

As indicated above, under Federal Rule of Civil Procedure 15(a)(2), a Court "should

freely give leave" to a party to amend his or her pleading "when justice so requires." Fed. R.

Civ. P. 15(a)(2). Although the Court has discretion to grant or deny leave to amend, "[l]eave to

amend a [pleading] should be freely given in the absence of undue delay, bad faith, undue

prejudice to the opposing party, repeated failure to cure deficiencies, or futility." <u>Richardson</u>,

193 F.3d at 548–49 (citing <u>Foman</u>, 371 U.S. at 182). The rationale for this standard is that "[i]f

the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief,

[the plaintiff] ought to be afforded an opportunity to test his claim on the merits." <u>Foman</u>, 371

U.S. at 182. However, "motions to supplement should be denied where [an] amendment (or

supplementation) would be futile." <u>SAI v. Dep't of Homeland Sec.</u>, 149 F. Supp. 3d 99, 126

(D.D.C. 2015); <u>see</u> <u>Foman</u>, 371 U.S. at 182 (stating that "futility of amendment" is a permissible

justification for denying a Rule 15(a) motion). "A motion to amend [a c]omplaint should be

denied as futile if the complaint as amended could not survive a motion to dismiss." <u>Petway v.</u>

<u>Santander Consumer USA Inc.</u>, No. 22-cv-3100 (RBW), 2024 WL 3443765, at *5 (D.D.C. July

17, 2024) (Walton, J.) (internal brackets omitted) (quoting <u>Black v. Nat'l Football League</u>

<u>Players Ass'n</u>, 87 F. Supp. 2d 1, 6 (D.D.C. 2000)).

The plaintiff's proposed Second Amended Complaint "adds additional facts clarifying the

involvement of [d]efendants Eric Yaffe and Lathrop GPM LLP . . . by setting forth the fact that

22

on information and belief, through [d]efendant Yaffe's actions, he wears 'two hats' and still

continues to serve as a <u>de facto</u> member of the Board and operates as such."  Pl.'s Mot. to

Amend at 2 (internal quotation modified).  The proposed Second Amended Complaint also

provides "further details . . . on the timing of the conduct of the [d]efendants and their intent to

harm Mr. Klayman and his clients."  <u>Id.</u>  Specifically, the proposed Second Amended Complaint

alleges that the defendants began sending copies of the Board's Report and Recommendation in

the Bundy Matter to jurisdictions where the plaintiff was licensed "on or around August 19,

2024" and the plaintiff was "scheduled to argue before the Fifth Circuit in <u>Rokit Drinks v.

Landry's Drinks et al.</u>, 23-20506 on October 8, 2024."  <u>Id.</u>  The proposed Second Amended

Complaint alleges sending the Report and Recommendation to the Fifth Circuit before this oral

argument "would cause Mr. Klayman and his clients maximum harm if he were prevented from

appearing at oral argument."  <u>Id.</u>

 The Court has determined that Count One in the Amended Complaint does not survive

the defendants' motions to dismiss because it is a "generic allegation" that does not identify what

contracts were interfered with.  The proposed Second Amended Complaint would do nothing to

cure this defect.  It does not identify any specific contract, nor does it explain how the defendants

interfered with a specific contract.  To the contrary, as the defendants point out, the Fifth Circuit

docket shows that the plaintiff did present argument in his Fifth Circuit case.  <u>See</u> ODC Defs.'

Opp'n to Second Am. Compl. at 3.  The proposed new allegation that defendant Yaffe "wears

two hats" and is a "<u>de facto</u> member of the Board" does nothing to connect the Lathrop

Defendants to the tortious interference claim and it does not allege facts that "allow the Court to

draw an inference of liability against" any defendant.  <u>See</u> <u>Petway</u>, 2024 WL 3443765, at *5.

Accordingly, because the plaintiff's proposed Second Amended Complaint in conjunction with

23

the Amended Complaint would not survive the defendants' motion to dismiss, the Court must

deny the plaintiff's motion for leave to file a Second Amended Complaint.

## G.    The ODC Defendants' Motion for Sanctions

Having determined that the plaintiff's Amended Complaint does not survive the

defendants' Rule 12(b)(6) challenges and that his proposed amendment of the Amended

Complaint would be futile in averting that fate, the Court now addresses the ODC Defendants'

request for sanctions.  In addition to their motion to dismiss the Amended Complaint, the ODC

Defendants also move "[f]or an award of sanctions pursuant to Fed. R. Civ. P. 11, 28 U.S.C.

§ 1927, and the Court's inherent authority."  ODC Defs.' Mot. at 1.  Rule 11, by its terms,

requires that a "motion for sanctions must be made separately from any other motion and must

describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).

Therefore, because this motion was not "made separately," the Court will assess the ODC

Defendants' request for sanctions only under 28 U.S.C. § 1927 and its inherent authority to

impose sanctions.

Under Section 1927, a court may impose sanctions against an attorney who "multiplies

the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  "The purpose of

[Section] 1927 is to allow the Court 'to assess attorney's fees against an attorney who frustrates

the progress of judicial proceedings.'"  Robertson v. Cartinhour, 883 F. Supp. 2d 121, 125

(D.D.C. 2012) (quoting United States v. Wallace, 964 F.2d 1214, 1218 (D.C. Cir. 1992)).  Before

ordering sanctions under Section 1927, a court must find "evidence of recklessness, bad faith, or

improper motive" by the offending attorney.  LaPrade v. Kidder Peabody & Co., Inc., 146 F.3d

899, 906 (D.C. Cir. 1998).  "This statutory sanction supplements, but does not displace, the

court's inherent authority to impose sanctions necessary to achieve the orderly and expeditious

disposition of cases before it." <u>Hall</u>, 219 F. Supp. at 119. "Under this broader [inherent] authority, . . . a federal court may sanction an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>Id.</u> (quoting <u>Chambers</u>, 501 U.S. at 45.)

The ODC Defendants request the Court sanction the plaintiff under Section 1927 because they contend that "the procedural history of the plaintiff's conduct is a textbook example of a lawyer who 'multiplies the proceedings . . . unreasonably and vexatiously.'" ODC Defs. Mem. at 35. In support of their position, they argue that the plaintiff has filed thirteen lawsuits against them related to disciplinary actions taken against him and that courts, including this court, have consistently dismissed them. <u>Id.</u> at 9–16. Indeed, courts have repeatedly dismissed the plaintiff's claims against the ODC and its employees because they are immune from an award of damages,[14] and that determination has been consistently upheld on appeal. <u>See</u> <u>Klayman</u>, 104 F. 4th at 312 (affirming district court determination that the ODC Defendants are immune from the plaintiff's damages claims); <u>Klayman</u>, 830 F. App'x at 662 (affirming district court determination that the ODC Defendants are immune from the plaintiff's damages claims in the appeal of two consolidated cases). Yet, the plaintiff has once again sued these same defendants for damages. <u>See</u> <u>The Jolly Group, Ltd. v. Medline Indus., Inc.</u>, 435 F.3d 717, 720 (7th Cir. 2006) ("We have also interpreted § 1927 to impose a continuing duty upon attorneys to dismiss claims that are no longer viable."). The position the plaintiff advanced in this case—that the ODC Defendants tortiously interfered with his business relationships—is the same position he previously advanced and was rejected by the D.C. Circuit. <u>See</u> <u>Klayman</u>, 104 F. 4th at 311. And, the D.C. Circuit clearly explained that "Klayman is wrong. As he has been told before,

---

[14] Although the plaintiff now also seeks injunctive relief against the ODC Defendants, that request does not preclude the Court from imposing sanctions because he has again also brought a claim for damages against defendants who are immune from an award of damages.

absolute immunity shields the ODC Employees from his damages claims." Id.  Because the plaintiff did not heed the unambiguous ruling of the Circuit, sanctions to reimburse the ODC Defendant for their attorneys' fees they have or are obligated to pay in order to defend against the same position are appropriate.  The ODC Defendants should not be forced to bear the costs of paying again for the same services to defend against the same claim that has already been advanced and judicially rejected.

Additionally, the plaintiff has used the judicial process "to insert extraneous attacks against [the defendants'] character back into the public record." Hall, 219 F. Supp. 3d at 120. The plaintiff's filings consist almost exclusively of legal conclusions that attack the defendants' character through the use of inflammatory language without the support of substantiated or specific facts.  In his oppositions, for example, he eschewed the opportunity to respond to the defendants' legal arguments and instead chose to reiterate personal attacks on the individual defendants.  It is not a distortion of reality to attribute the plaintiff's actions to bad faith or improper motive, and although "the bar for imposing Section 1927 sanctions is high," id., the defendants have satisfied their burden.  Accordingly, the Court concludes that imposing sanctions that permit the ODC Defendants to recoup the cost of their attorneys' fees is warranted pursuant to Section 1927.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant (1) the Lathrop Defendants' motion to dismiss; (2) grant the ODC Defendants' motion to dismiss; (3) grant the ODC Defendants' request for sanctions; and (4) deny the plaintiff's motion for leave to file a Second Amended Complaint.

**SO ORDERED** this 6th day of February, 2026.[15]

REGGIE B. WALTON
United States District Judge

---

[15] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.